**Dated: November 19, 2026**

**The following is ORDERED:**

PAUL R. THOMAS
UNITED STATES BANKRUPTCY JUDGE

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

**IN RE:**
**BLACKBEARD MARINE, INC.,** **Debtor.**

**Case No. 25-81085-PRT**
**Chapter 7**

**ORDER GRANTING AMENDED MOTION TO APPROVE COMPROMISE AND SETTLEMENT**

Before the Court is the Amended Motion to Approve Compromise and Settlement filed jointly by Luke Homen, Chapter 7 Trustee, and Yamaha Motor Finance Corporation, U.S.A. (ECF No. 60) ("Motion to Compromise"). Objections were filed by Mark Kidd (ECF No. 71), and Phillip S. Jennings, Jr., Individually and as Trustee of the Phillip S. Jennings, Jr. Family Trust (ECF No. 75).[1] The Trustee filed a Limited Reply to Kidd's Objection (ECF No. 80). Yamaha also filed a Reply (ECF No. 95). After conducting an evidentiary hearing on this matter, the Court has reviewed the evidence, arguments and applicable authorities and finds that the Motion to Compromise should be granted.

---

[1] Creditor Northpoint Commercial Finance LLC withdrew its objection to the Motion to Compromise (ECF No. 94) prior to the evidentiary hearing.

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(A) and (O). The Trustee brings this motion before the court under 11 U.S.C. § 105 and Fed. R. Bank. P. 9019(a).

## Findings of Fact

Two witnesses testified before the Court regarding this matter: Jon Grant ("Grant"), Yamaha's Commercial Asset Compliance and Audit Manager, and Luke Homen ("Homen"), Chapter 7 Trustee. Objecting party Phillip S. Jennings, Jr., Individually and as Trustee of the Phillip S. Jennings, Jr. Family Trust ("Jennings") was represented by counsel but did not appear or testify at the hearing. Objecting party Mark Kidd ("Kidd"), an unsecured creditor appearing pro se, participated in the hearing, including cross-examination of the witnesses. Grant offered a detailed analysis of the history of the Debtor's transactions with Yamaha, including issues with missing collateral, Yamaha's efforts regarding repossession and disposal of collateral, and resulting litigation. Similarly, the Trustee's testimony provided detailed information as to how he concluded that settlement was the estate's best option. Based on the evidence presented at the hearing as well as the record in this case, the Court makes the following findings of fact.

The Debtor is the parent and sole member of seven limited liability companies ("Blackbeard Subsidiaries"). The Debtor and its subsidiaries operated outboard, boat, watercraft and powersports dealerships in Oklahoma, Texas and Missouri ("Dealerships"). Yamaha Motor Finance Corporation, U.S.A. ("Yamaha") provided the Dealerships with floorplan financing under an Inventory Financing Agreement ("IFA"), to purchase outboard, boat, watercraft and

powersports inventory as well as for other approved purposes subject to Yamaha's discretion.[2] The Dealerships granted Yamaha a security interest in all personal property of the Debtor, such as accounts, inventory, equipment, general intangibles, chattel paper, promissory notes, deposit accounts, rights to certain payments, rebates, discounts, warranty reimbursements, and all books and records. As explained by Grant, the IFA included a provision making all Dealerships jointly and severally liable for all obligations under the IFA, thereby imposing the obligations of each dealer on all dealerships. Phillip S. Jennings, Jr. is a personal guarantor of the Blackbeard Subsidiaries' obligations to Yamaha under the IFA.

In August of 2024, Yamaha's agent conducted a wholesale inventory audit of the Dealerships and discovered missing inventory that had been sold out of trust valued at over $ 950,000.00.[3] On September 13, 2024, Yamaha filed a lawsuit against Blackbeard Marine, Inc. (Debtor herein) in Marshall County, Oklahoma, as well as lawsuits against the Blackbeard Subsidiaries in Oklahoma, Missouri and Texas. Debtor Blackbeard Marine filed counterclaims against Yamaha. Yamaha obtained orders for delivery of collateral and other replevin relief. On October 3, 2024, Blackbeard Marine and the Blackbeard Subsidiaries entered into a Voluntary Surrender Agreement signed by Jennings to surrender collateral to Yamaha, valued at approximately $ 12,000,000.00. Most of the surrendered collateral was returned to the manufacturer or repurchased, with the Blackbeard Subsidiaries given credit for the original invoiced price. Eventually, all lawsuits were consolidated into the original Marshall County,

---

[2] The Inventory Financing Agreement was signed by Phillip Stephen Jennings, Jr. as President of Blackbeard Marine, Inc. (Debtor) and as Manager of the seven Blackbeard Subsidiaries. *See* Yamaha's Proof of Claim 10-2 with attachments.

[3] Grant defined "sold out of trust" as meaning the collateral was sold but proceeds not remitted to Yamaha on its security interest.

Oklahoma case. According to Jennings, the estate's remaining counterclaims involve the commercial reasonableness of Yamaha's disposition of collateral, adequacy of its accounting, and retention of credits.

At some point during the pendency of the state court lawsuits, a company named Quad City USA offered to purchase Blackbeard Marine V but was notified of Yamaha's security interest in the inventory. Litigation involving this subsidiary was originally filed in Delaware County, Oklahoma but consolidated into the Marshall County case. The Marshall County Court ruled that Yamaha had a security interest in the sale proceeds of Blackbeard Marine V.[4] The sale proceeds of $ 750,000.00 were placed into escrow. Yamaha was granted an Order of Attachment regarding the escrowed funds, and the funds were ordered to be remitted to the Court's registry in Marshall County.

Debtor Blackbeard Marine, Inc. filed its voluntary petition under Chapter 7 on November 10, 2025. On Schedule D, Debtor valued Yamaha's debt at $ 2,200,000.00.[5] On its Statement of Financial Affairs, Debtor identified two pending lawsuits involving Yamaha as of the petition date: (1) CJ 2024-70 in Marshall County, Oklahoma, and (2) Case No. 123,365 in the Oklahoma Supreme Court.[6] Yamaha filed a Proof of Claim for $ 2,304,870.89 as the deficiency due under the IFA for unpaid inventory loans.[7]

The Trustee investigated the debt of Yamaha by reviewing the pleadings in the state court cases, and a large number of documents he requested and received from Debtor's counsel in the

---

[4] *See* ECF No. 95, Exhibit 2, CJ 2024-70 Court's Notice of Decision Granting Plaintiff's Application of Attachment Filed in Delaware County, dated October 31, 2025.

[5] ECF No. 14, pp. 9-10.

[6] ECF No. 15, Part 7, p. 3.

[7] Proof of Claim 10-2 filed July 14, 2026.

state court cases. The Trustee had conversations with counsel for Yamaha, reviewed Yamaha's Proof of Claim and exhibits, reviewed the claims register, and interviewed Jennings, the former owner of Debtor, at the 341 Meeting of Creditors. The Trustee also consulted with the estate's forensic accountant who reviewed the financial records of Debtor and Blackbeard Subsidiaries.

After his extensive investigation, the Trustee concluded that a settlement with Yamaha was the best option for the bankruptcy estate rather than continuing to pursue the counterclaims asserted by Debtor in the state court litigation. He assessed Debtor's counterclaims as having a low likelihood of success, with Yamaha having a very substantial likelihood of prevailing in that litigation. Under cross-examination by Kidd, the Trustee explained that he believed the counterclaims to have a nuisance value of approximately $ 25,000.00. He identified substantial risks to the bankruptcy estate in pursuing the counterclaims, including significant costs to the estate to retain counsel to represent the estate and estimated litigation costs of approximately $ 500,000.00. He believes the legal issues involved to be fairly complex rather than simple legal issues, and that the litigation thus far has been quite contentious.

As Trustee, one of his guiding principles is to look after the best interests of the creditors and to obtain a meaningful distribution for the unsecured creditors. Settling with Yamaha and obtaining monies for the estate now provides certainty of funds being available to pay creditors. Such certainty does not exist if litigation is pursued as recovery is not guaranteed and, even if successful, payout will likely not be received for many months. Yamaha's initial offer to settle included a payment of $60,000.00 to the estate as well as a waiver of any distribution on its $ 2,304,870.89 claim. By waiving any distribution on Yamaha's claim, the settlement will result in an increase of the pro rata share of any distribution to the unsecured creditors, including Kidd's unsecured claim. In return, the Trustee would file a request for dismissal with prejudice

of the counterclaims filed in the state court case, abstain from filing other claims for relief against Yamaha or its agents or an objection to its Proof of Claim, and release all claims Debtor or its subsidiaries may have against Yamaha or its agents. Yamaha will pay the bankruptcy estate once the escrowed funds are released in the state court case. The proposed settlement does not include a release of any of Jennings' personal defenses, rights or liabilities regarding Yamaha.

After the Motion to Compromise was filed, Jennings offered to pay the estate $ 75,000.00 for the counterclaims in the state court litigation. Jennings would fund all costs of litigation. The Trustee requested proof that Jennings had the ability to pay these funds to the estate but received no such assurances nor proof of ability to pay. In response to Jennings' offer, Yamaha increased its offer to $ 75,000.00.

Jennings filed a proof of claim against the estate for $ 1,323,306.00.[8] His family trust filed a proof of claim for $ 540,539.39.[9] Jennings did not appear at the hearing and presented no witnesses. The Trustee filed a Notice of Removal of Jennings as Manager of the seven Blackbeard Marine Subsidiaries.[10]

## **Discussion**

Fed. R. Bankr. P. 9019(a) provides that after notice to the proper parties and a hearing, the court may approve a compromise or settlement. "Settlements are generally favored in bankruptcy to expeditiously close the debtor's estate." *In re Ruiz*, 2023 WL 5201671, at *1 (B.A.P. 10th Cir. Aug. 14, 2023). In considering whether to approve a settlement or compromise, a bankruptcy court should determine whether the settlement is fair and equitable and in the best

---

[8] Proof of Claim 13-1.

[9] Proof of Claim 14-2.

[10] ECF No. 123.

interests of the estate. *Rich Dad Operating Co., LLC v. Zubrod (In re Rich Global, LLC),* 652 Fed. Appx. 625, 632 (10th Cir. 2016). Court's typically review the following four factors: (1) the chance of success of the litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interest of creditors. *See Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997). The court's responsibility is not to decide the numerous questions of law or fact, but to review the issues and determine "whether the settlement falls below the lowest point in the range of reasonableness." *In re Rich Global, LLC*, 652 Fed. Appx. at 632 (citing *8 Norton Bankruptcy Law & Practice* § 167.2.) Moreover,

> [i]n most cases, a bankruptcy court should show deference to a trustee as it considers the beneficial nature of a proposed settlement. The court should evaluate whether a trustee's actions are "within the universe of reasonable actions," and assess "whether the settlement falls below the lowest point in the range of reasonableness."[24] The court is not to substitute its own judgment for that of the trustee. In order to function, bankruptcy trustees must be allowed to exercise their judgment in a reasonable fashion.

*In re Gordon*, 484 B.R. 811, 817–18 (Bankr. N.D. Okla. 2013).

*(1) Chance of success of the litigation on the merits.*

The Trustee evaluated the estate's probability of success in the state court case as unlikely and Yamaha's likelihood of success as very likely. Jennings believes the opposite to be true. The Trustee conducted an extensive investigation of the pending litigation. He described the information he reviewed as well as his analysis that led to his conclusion that there appears to be more risk to the estate if it pursues litigation than if it settles the matters now. The Court concludes that the Trustee's assessment of chance of success on the merits is reasonable given the contentious nature of the dispute, the number of pending lawsuits and appeal, and the amount involved. With the number of lawsuits and entities involved, it is difficult to predict the likely

outcome of these matters. Based on the Court's review of the evidence, recovery for the estate is at best uncertain, and there is certainly a risk that the estate will recover nothing. Under these facts, the Trustee's assessment of the estate's chance of success on the merits is reasonable.

*(2) Possible problems in collecting a judgment.*

The analysis of this factor typically focuses on a defendant's ability to pay, but it can also include the costs associated with collecting and enforcing any judgment, as this factor "goes to the heart of the Rule 9019 inquiry: a cost-benefit analysis." *Ruiz,* 2023 WL 5201671, at *5 (citations omitted). The Trustee testified that should the estate prevail against Yamaha, he anticipated no issues in collecting on a judgment against Yamaha. The Court agrees with the Trustee that he should encounter no issues in collecting a judgment against Yamaha. However, Yamaha argued that it has a right of setoff that could substantially reduce the amount of the estate's recovery. Therefore, it is possible that the costs of obtaining a judgment could exceed the amount of the judgment.

*(3) Expense and complexity of the litigation.*

The Trustee estimated litigation costs of approximately $ 500,000.00. No evidence was presented to contradict this estimate. Given the history of Debtor's and Jennings' relationship with Yamaha, the number of lawsuits and amount of damages at issue, the Court finds that this estimate is reasonable. The litigation is fairly complex due to the number of entities involved, amount of collateral that was involved, allegations of improper actions of the Debtor and its principal Jennings, issues regarding Yamaha's disposition of collateral, valuation of Yamaha's claim and deficiencies, and the scope of the litigation over several states as well as the pending appeal. Therefore, the Court agrees with the Trustee's conclusion that litigation would be costly and any potential recovery for the estate uncertain.

*(4) Interest of creditors.*

Two creditors objected to this Motion to Compromise. One was Jennings who informed the Court that he had personally guaranteed the IFAs and had individual claims against Yamaha which he feared were being waived under the proposed settlement. His offer of $ 75,000.00 to purchase the estate's claims against Yamaha benefitted the estate by prompting Yamaha to increase its initial offer to match his. However, he failed to offer proof of his ability to pay the $ 75,000.00 to the estate and only appeared at the evidentiary hearing through his counsel. In comparing his offer to Yamaha's, the Court agrees with the Trustee that Yamaha's offer of compromise is more valuable to the estate. Yamaha has a large claim against the estate. It offers to waive any distribution on its claim. This will increase the pro rata distribution to unsecured creditors. This settlement with Yamaha avoids potential administrative costs to the estate should the Trustee choose to challenge Yamaha's Proof of Claim. Administrative costs reduce the pool of funds available for distribution to unsecured creditors. Jennings offer does not include a similar waiver of distribution on these claims. Although his counsel cross-examined Grant regarding Yamaha's audit finding collateral was sold out of trust while Jennings was President of Debtor Blackbeard, as well as Yamaha's accounting and disposal of collateral, this produced no evidence for the Court indicating that Yamaha's actions were unreasonable or its accounting of amounts due inaccurate.

Kidd's objection to the Motion to Compromise focused on the $ 750,000.00 in escrowed funds held in the Marshall County Court registry. Yamaha provided an order from the state court stating that Yamaha had a security interest in these funds and were subject to an order of attachment entered on Yamaha's behalf. The Trustee explained that his forensic accountant reviewed the assets and liabilities of the Debtor and its subsidiaries. He also reviewed the UCC

filing of Yamaha, which was greater than $ 750,000.00, and concluded that Yamaha was first in line for these funds. Based on that assessment, those funds would go to Yamaha, not the bankruptcy estate. Compromising with Yamaha on its claim in exchange for $ 75,000.00 and its waiver of a distribution from the estate will increase the pro rata distribution to other unsecured creditors such as Kidd. Settlement also avoids costs to the estate for litigation, avoids delay of a potential recovery, and eliminates the risk of litigation. Therefore, the Court concludes that the interests of creditors weigh in favor of settlement.

## Conclusion and Order of the Court

The settlement proposed by the Trustee falls "within the universe of reasonable actions." *Gordon,* 484 B.R. at 817. He has met his burden of establishing that the terms of this settlement are reasonable. The Court believes that the Trustee exercised sound business judgment in reaching this compromise with Yamaha. Therefore, the Court finds that under these facts, the settlement is fair and equitable, is in the best interests of the estate, and satisfies the standard for approval under *Kopexa.*

IT IS THEREFORE ORDERED THAT the Amended Motion to Approve Compromise and Settlement filed jointly by Luke Homen, Chapter 7 Trustee, and Yamaha Motor Finance Corporation, U.S.A. (ECF No. 60) is **granted** with the modification that Yamaha's payment to the estate shall be in the amount of $ 75,000.00.

The Objections of Mark Kidd (ECF No. 71), and Phillip S. Jennings, Jr., Individually and as Trustee of the Phillip S. Jennings, Jr. Family Trust (ECF No. 75) are overruled.

###